**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLLIN S.,[1]<br>Plaintiff,<br>v.<br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br>Defendant. | No. 2:25-cv-6905-DSR<br>**MEMORANDUM DECISION AND ORDER** |

## 1. INTRODUCTION

Plaintiff Collin S. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") ceasing his Title II Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Court affirms the Commissioner's decision.

## 2. PROCEDURAL HISTORY

On April 8, 2016, Plaintiff filed his application alleging a disability onset beginning July 29, 2008. Administrative Record ("AR") at 251-254.[2] The Commissioner granted his claim by Administrative Law Judge ("ALJ") determination

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The AR is filed with the Court concurrently with Defendant's Answer to the Complaint. See Doc. No. 8. Citations herein to the AR are to the page numbers in the lower right corner of each page, which are sequential through the entire AR.

on October 3, 2017. AR at 104-112. This is referred to as the "comparison point decision" or "CPD." AR at 42, ¶ 1.

Roughly five years later, on August 25, 2022, the Commissioner conducted a continuing disability review ("CDR") and determined that Plaintiff's disability under the Social Security Act ("Act") ceased as of March 2022. AR at 150-153. That determination was upheld upon reconsideration on August 17, 2023. AR at 182-196. Plaintiff then requested a de novo hearing on the matter before an ALJ. AR at 197-198. Such hearing occurred on June 26, 2024, before ALJ Diana Coburn. AR at 40, 59-90. Plaintiff was represented by counsel and testified. AR at 62. The ALJ also received testimony from a vocational expert ("VE"). AR at 85. On September 13, 2024, the ALJ issued a written unfavorable decision. AR at 37-58. The Appeals Council denied Plaintiff's request for review on May 29, 2025. AR at 1-6. The ALJ's September 13, 2024, decision is thus the Commissioner's final decision. Id. at 1.

Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). See Compl. (Doc. No. 1). Defendant answered the Complaint and filed the AR on September 30, 2025. See Doc. No. 8. Plaintiff filed his Opening Brief on December 12, 2025. See Doc. No. 15. Defendant filed his Brief in response on February 5, 2026. See Doc. No. 19. Plaintiff did not file a Reply. Thus, this matter is ready for decision. The Court finds that this matter is appropriate for decision without oral argument. See Local Rule 7-15.

## 3. PLAINTIFF'S BACKGROUND

Plaintiff was a younger individual on the alleged onset date.[3] AR at 51, ¶ 11. He has at least a high school education. Id. at ¶ 12. He is a military veteran and has a 100% service-connected disability from the Veteran's Administration. AR at

---

[3] Plaintiff was considered a "younger person" on his alleged onset date and at the hearing. AR at 51; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age [fifty]"); 20 C.F.R. § 416.963(c).

484. Plaintiff has previously worked as an extra in movies and attended a program for acting. AR at 66-67, 81-81. His 2017 disability determination was based on a medically determinable impairment of post-traumatic stress disorder ("PTSD"). AR at 42, ¶ 2. Following the 2024 hearing on the CDR, the ALJ determined that as of March 1, 2022, Plaintiff had the following medically determinable impairments: (1) migraines; (2) degenerative disc disease of the spine; (3) left-eye blindness; (4) PTSD; (5) and traumatic brain injury ("TBI"). AR at 42, ¶ 4.

**4. STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him or her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. See 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he or she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Where, as here, the question is whether a previously determined disability continues, the following eight-step sequential evaluation process applies:

(1) Is the claimant engaging in substantial gainful activity? If so, and the claimant is past any applicable trial work period, the claimant's disability ends. If not, proceed to step two.

(2) Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in medical severity of those impairments present at the time of the CPD? If so, proceed to step four. If not, proceed to step five.

(4) Is the claimant's medical improvement related to the claimant's ability to do work, i.e., has there been an increase in the claimant's residual functional capacity ("RFC")[4] based on the impairment that was present at the time of the CPD? If not, proceed to step five. If so, proceed to step six.

(5) If there has been no medical improvement or if improvement is not related to claimant's ability to do work, do any statutory exceptions to medical improvement apply? If none apply, the claimant's disability continues.

(6) Are all of the claimant's current impairments in combination severe? If impairments are not severe, the claimant's disability ends.

(7) Does the claimant possess an RFC to perform the claimant's past relevant work? If a claimant can do past relevant work, the claimant's disability ends.

(8) Is there other work that a person with the claimant's age, education, past work experience, and RFC can perform? If so, the claimant's disability ends. If not, the claimant's disability continues.

See E. W. v. Bisignano, No. EDCV 25-00872-AS, 2026 WL 1333746, at *2 (C.D. Cal. May 12, 2026) (citing 20 C.F.R. § 404.1594(f)(1)-(9)); see also AR at 42-51 (ALJ applying this process).

**5. THE ALJ'S DECISION**

As noted above, the ALJ issued a written decision on this matter on September 13, 2024, after the June 26, 2024, hearing. AR at 37-58. At the outset, she determined Plaintiff to have the following medically determinable impairments

---

[4] An RFC is the most a claimant can still do despite his or her limitations. See 20 C.F.R. § 404.1545(a)(1).

as of March 1, 2022 (the date on which Plaintiff was determined no longer to be disabled): migraines, degenerative disc disease of the spine, left-eye blindness, PTSD, and TBI. AR at 42. The ALJ then conducted the eight-step sequential analysis. AR at 42-52.

**A. Step One**

At step one the ALJ found that Plaintiff has not engaged in substantial gainful activity through the date of her decision. AR at 42, ¶ 3.

**B. Step Two**

At step two the ALJ concluded that since March 1, 2022, Plaintiff "had not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. at ¶ 5.

**C. Step Three**

At step three ALJ Coburn found that "[t]he medical evidence supports a finding that, by March 1, 2022, there had been a decrease in medical severity of the impairment at the time" Plaintiff was first found to be disabled in 2017. AR at 45, ¶ 6.

**D. Step Four**

The ALJ then proceeded to step four. There she determined that the medical improvement found at step three "is related to the ability to work because, by March 1, 2022, [Plaintiff's] CPD impairment(s) no longer met or equaled the same listing that was met at the time of the CPD[.]" AR at 45, ¶ 7.

**E. Step Six**

Because the answer at step four was "yes," the ALJ proceeded to step six to determine whether Plaintiff's impairments or combination of impairments are severe. AR at 45-46, ¶ 8. She answered that question in the affirmative, at least as to Plaintiff's migraines, degenerative disc disease, left-eye blindness, PTSD, and TBI, finding those conditions "cause more than minimal limitation in [Plaintiff's] ability

to perform basic work activities." Id. at 45. She answered in the negative as to Plaintiff's complaint of shoulder pain, however. Id. at 45-46.

**F. Residual Functional Capacity**

The ALJ then determined Plaintiff's RFC. She found that Plaintiff had the RFC

> to perform light work[5] … except he can occasionally climb ladders, ropes, and scaffolds; and can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He has monocular vision (no vision in the left eye) and therefore cannot perform tasks which require a complete visual field or depth perception or work in proximity to hazards such as unprotected heights, dangerous, moving machinery, and open flames. He cannot have exposure to bright lights, such as the sun. He can have frequent contact with supervisors and coworkers, and occasional contact with the general public.

AR at 46-51, ¶ 9.

**G. Step Seven**

At step seven, per the Expedited Vocational Assessment, the ALJ did not determine whether Plaintiff is able to perform past relevant work because "[w]hether or not [Plaintiff] is able to perform past relevant work, if there are jobs that exist in significant numbers in the national economy that [Plaintiff] can

---

[5] "Light work" is defined as: "[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b); see also Aide R. v. Saul, No. CV 19-02069-ADS, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

perform, a finding of 'not disabled' is appropriate." AR at 51, ¶ 10. She therefore continued to the next step of the analysis. Id.

**H. Step Eight**

Finally, at step eight, the ALJ found that, "[s]ince March 1, 2022, considering [Plaintiff's] age, education, work experience, and residual functional capacity based on the impairments since March 1, 2022, [Plaintiff] has been able to perform a significant number of jobs in the national economy." AR at 51-52, ¶ 14. With the assistance of the VE's testimony, the ALJ found that Plaintiff would be able to perform occupations such as routing clerk (DOT 222.687-022), router (DOT 222.587-038), and housekeeping cleaner (DOT 323.687-014. Id. She found that those "occupations, singly or in combination, exist in significant numbers in the national economy." Id. at 52.

Accordingly, the ALJ concluded that "since March 1, 2022, the claimant was capable of making a successful adjustment to work that existed in significant numbers in the national economy" and that a "finding of 'not disabled' is therefore appropriate" under the applicable analysis. Id. The ALJ therefore found that Plaintiff's "disability under sections 216(i) and 223(f) of the Social Security Act ended on March 1, 2022, and [Plaintiff] has not become disabled again since that date." AR at 53.

**6. PLAINTIFF'S CLAIMS**

Plaintiff alleges a single point of error in his Brief: that in determining Plaintiff's RFC, the ALJ improperly rejected Plaintiff's subjective symptom testimony without providing specific, clear and convincing reasons. See Pl.'s Br. (Doc. No. 15) at 5.

**7. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a District Court may review the Commissioner's decision to deny benefits. A court will reverse the Commissioner's decision only "if the ALJ's decision was not supported by substantial evidence in

the record as a whole or if the ALJ applied the wrong legal standard." Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021) (citations omitted); see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) ("We may set aside the ALJ's denial of benefits only 'when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.'") (citation omitted).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence.'" (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate

nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]'" Treichler, 775 F.3d at 1099 (citation omitted).

## 8. DISCUSSION

As noted above, Plaintiff raises only a single issue in this appeal of the Commissioner's decision – whether the ALJ impermissibly rejected Plaintiff's subjective symptom testimony. For the reasons discussed below, the Court finds that the ALJ provided sufficient reasons to discount Plaintiff's subjective complaints in determining Plaintiff's RFC.

### A. Plaintiff's Subjective Symptom Testimony

At the June 2024 hearing before the ALJ, Plaintiff testified as to his subjective symptoms as follows: He is unable to work full time because of his PTSD, migraines, and other physical injuries because of combat. AR at 69-80. He experiences migraines up to ten times a month. AR at 69. The migraines can last for 24 hours and require him to isolate in a dark room until the migraine passes. AR 69-70. Additionally, Plaintiff's PTSD and flashbacks cause him to be hypervigilant, and he has difficulty relaxing in public or in new places. AR at 71-74. He also struggles as a result of his PTSD to communicate effectively with people, to accept criticism, and to avoid conflict. Id. Because of his TBI, he has difficulty concentrating and both processing and retaining information. AR at 76-77. He experiences physical pain, including pain in his spine from an injury he obtained while training as a firefighter and from an IED while in the military that limits his ability to stand to 20-30 minutes before being in pain. AR at 77. He also testified to pain in his shoulder from a car accident in 2022, tendonitis in his left knee, and pain in his neck. AR at 78-79. He stated that he does not take any type of painkiller medication due to his previous history of substance abuse. AR at 70, 78. He lives alone with his service dog, he can cook for himself, he can fly on an airplane, he is able to clean, and he occasionally swims and does yoga to help with pain. AR at 66-84.

**B. Applicable Law**[6]

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).

"If the ALJ's ... finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489. Moreover, as mentioned, a court must

---

[6] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation, however, does not "alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant’s testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

"review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630. Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts." (citation omitted)).

Finally, even if an ALJ errs in assessing subjective complaints, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless"). In that regard, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are valid. See Bray, 554 F.3d at 1227; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

**C. Analysis**

After considering the evidence in the record, the ALJ found that Plaintiff's "medically determinable impairment could have reasonably been expected to produce the alleged symptoms." AR at 47. She also found, however, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective medical evidence and other evidence … ." Id. The ALJ explained that the objective medical evidence, the treatment sought, and Plaintiff's activities of daily living were inconsistent with Plaintiff's statements. Id. at 49. She also considered the opinions of various doctors. AR at 49-52. Accordingly, the ALJ found the above-stated RFC was the most Plaintiff could do on a regular continuing basis with his limitations. AR at 53.

Plaintiff gave oral testimony claiming pain and other symptoms of a disabling and, indeed, incapacitating severity. See AR at 65-85. For example, Plaintiff testified that he suffered up to 10 migraines a month that left him unable to do anything besides retreat to an isolated dark and quiet room until the migraine passes 24 hours later. AR at 69-70. He also testified that his PTSD causes him to be hypervigilant and experience flashbacks. AR at 70-74. Further, Plaintiff shared that his PTSD causes him to have conflict with others, to have trouble focusing, to struggle to process information, and to respond to conflict in inappropriate ways – all issues that he claimed would prevent him from maintaining stable employment. AR at 70-73, 75. Lastly Plaintiff testified about his physical injuries, including pain in his spine, his shoulder, his knee, and his neck. AR at 77-79. In defining Plaintiff's RFC, the ALJ discounted Plaintiff's subjective complaints regarding the severity of his allegedly disabling symptomatology as it was not supported by the record. AR at 47-49.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the pain and other symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of "malingering").[7] An ALJ's credibility findings "must be sufficiently

[7] In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Nerio Mejia v. O'Malley, 120 F.4th 1360, 1363 (9th Cir. 2024); Ferguson v. (cont'd . . .)

specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also SSR 16-3p (eff. Mar. 28, 2016).

In discounting Plaintiff's subjective complaints in this case, the ALJ correctly observed that the objective medical evidence suggested less severe symptoms than Plaintiff claimed. She observed that medical reports reflected mostly mild or normal findings on examination and testing. See AR at 48-49. An ALJ permissibly may rely in part on a lack of supporting medical evidence in discounting a claimant's allegations of disabling symptomatology. See Burch v. Barnhart, 400 F.3d at 681 ("Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (same). Further, "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498; see Carmickle v. Commissioner, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . .").

---

O'Malley, 95 F.4th 1194, 1197-98 (9th Cir. 2024); Glanden v. Kijakazi, 86 F.4th 838, 846 (9th Cir. 2023); Smartt v. Kijakazi, 53 F.4th 489, 497 (9th Cir. 2022) ("Smartt"); Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); see also, Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In Ahearn v. Saul, 988 F.3d 1111, 1116 (9th Cir. 2021), the Ninth Circuit appeared to apply both the "specific, cogent" standard and the "clear and convincing" standard. In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

Additionally, the ALJ emphasized the relatively conservative nature of Plaintiff's treatment over the years. AR at 48 (citing AR at 440-565, 644). An ALJ properly may rely on a limited or conservative course of treatment to justify the discounting of a claimant's subjective complaints. See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's "minimal conservative treatment" and the treating physician's failure to prescribe (and the claimant's failure to request) medical treatment commensurate with "supposedly excruciating pain") (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications).

The ALJ also found that Plaintiff's reports of his alleged limitations were not consistent with the evidence of his activities of daily living contained in the record. AR at 48 ("Throughout the record, he indicated that he could walk his dog, dress and bathe himself, do household chores, hike, swim, run errands, shop, cook, read, exercise, go to the beach, hike, trade, pay bills, and manage money."). Plaintiff also "reported that he can read monologues, screenplays, and online articles." Id. (citing AR at 475). The ALJ further noted that Plaintiff was able to attend a program at a university to obtain an actor's certificate without receiving any student accommodations in the program. AR at 49 (citing AR at 187). Activities of daily living are a relevant consideration in assessing a claimant's credibility. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Although the claimant does not need to "vegetate in a dark room" to be considered disabled, Cooper v. Brown, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discount a claimant's testimony to

the extent his or her activities of daily living "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2011), superseded by statute on other grounds. The daily activities noted by the ALJ – e.g., hiking, swimming, going to the beach, running errands, and even attending a university certificate program in acting – do contradict Plaintiff's testimony of total debilitating impairment, such as the inability to go places with large crowds and getting up to 10 migraines a month that last for a whole 24-hour day.

There is certainly evidence in the record to indicate that Plaintiff's impairments cause pain. However, the fact that a claimant suffers from pain, even significant pain, is not sufficient to justify an award of benefits. Rather, the pain must be so severe as to preclude gainful employment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any medical conditions produce pain not severe enough to preclude gainful employment. The Disability Insurance and Supplemental Security Income programs are intended to provide benefits to people who are unable to work; awarding benefits in cases of non-disabling pain would expand the class of recipients far beyond that contemplated by the statute."); Curbow v. Colvin, No. CV-14-8222-PCT-ESW, 2016 WL 386221 at *5 (D. Ariz. Feb. 2, 2016) ("[D]isability requires more than mere inability to work without pain.")

In the present case, the ALJ stated sufficient valid reasons to allow this Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. See Moisa v. Barnhart, 367 F.3d at 885. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995). The Court should not and does not determine the credibility of Plaintiff's testimony and statements concerning his subjective symptomatology. Absent legal error, it is for

the Administration, and not this Court, to do so. See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

**9. CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner. Judgment will be entered on a separate form.

DATED: September 16 , 2026 ______________________________

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE